This is Mobile Telecommunications Technologies v. United Parcel Service 2017-1254. Councilor Puckett, you reserve five minutes of your time for revote. Is that correct? That is correct, Your Honor. Okay, you may proceed when you're ready. Good morning, and may it please the Court. While it is common post-alice for patent eligibility under Section 101 to be determined at the pleading stage of a case, doing so is permitted only where the requirements of the Thorough Rules of Civil Procedure 12 are met. In connection with Section 101 eligibility, a court may take judicial notice of facts only as permitted by Federal Rule of Evidence 201. Alice? Is it your argument, just to kind of lay a couple of opening parameters, is it your argument that you can bring a 101 challenge only at the pleading stage? Oh, quite the contrary. Our argument is that in some cases... So as long as the Rules of Civil Procedure and Evidence and Constitutional Review Process are met, I do believe that a Section 101 challenge can be brought at any stage of the proceedings. There are many cases from this Court post-alice in which Section 101 eligibility has been determined at the pleading stage, either 12b6 or a 12c motion for judgment on the pleadings. But where there are disputed factual issues that require the taking of evidence, then our argument is that determination of Section 101 eligibility on the pleadings is inappropriate and requires the taking of evidence, the use of summary judgment procedures, and resolution of factual issues, which did not happen here. So in our 101 cases, we pretty generally state that we're directed under Alice to look at whether the claims are directed to an abstract idea, let's say. If that's the case and we're looking only at the claims, then why do we need a factual determination? Well, so for two related reasons. One is to conduct a claim construction where one is needed, and we argue that one is here. And then second, to determine in appropriate circumstances whether there is an inventive concept at Step 2 of the Alice determination as a result of some of those claim limitations. So, for example, and we believe that the most appropriate precedent here from a procedural standpoint is the Baskin case. As Your Honor, Judge Reyna noted in a footnote in your dissent in the Amdocs decision, footnote 4, Baskin is largely a procedural case, which holds that at the pleading stage, 12b6 or 12c, if there are allegations, whether they be of a particular claim construction or of a particular inventive concept that is claimed in a patent, at that stage, unless there is evidence in the pleadings, which includes, of course, the patent and its specification, unless there is evidence that can rebut that, or I should note also, based upon the taking of judicial notice, if you don't have evidence that can rebut the allegations of a claim construction or an inventive concept, then a determination of Section 101 eligibility at the pleading stage is inappropriate. What are the facts that you think are relevant, whether facts underlying a claim construction, facts as to conventionality, you said as a shorthand for the little trio in Mayo, what are the specific facts that you think? Let me answer that with specificity by pointing to the portions of the Court's opinion below, and these are most clearly stated in the Court's reconsideration order. First, the Court holds on page 4 through 5, appendix page 33 and 34. This is appendix page 33 through 34. It's page 4 through 5 of the reconsideration order. First, the Court stated, summarized its holding from the original grant of the motion of the pleadings, that the claim elements were the rough equivalent of merely generic computers performing routine computer functions. The Court says that was the Court's holding. Okay? So that's the first. I'm sorry. I'm not sure I'm at the same page. I'm looking at appendix 33. Where on that page do you want me to look at? So this is where the Court states at the end of a paragraph, the holding that the claim elements were the rough equivalent of merely generic computers performing routine computer functions was the Court's holding. So there's an equivalency. The claim elements we're talking about here are wireless page message and page operations, paging operations center. The Court says, well, that's just the equivalent of a generic computer. Mind you, and this is important, you can't understand this appeal. You cannot understand anything about this case or this patent or this appeal unless you understand one important fact. In September of 1995, there was a tectonic shift in the telecommunications world when Intel launched its Skytel network. That is considered that it was a revolutionary network that sets the foundational framework, the connectionless framework, for modern-day wireless delivery of connectionless data, e-mail and short message SMS and others. Okay? That occurred just six months prior to the filing of the provisional application in this case. The court held right here. Are we supposed to read that into the claim, the breakthrough Skytel version that came out six months before the filing? We are not asking you to read it into the claim. But in making a factual determination that certain claim elements are the equivalent of a generic computer, then yes, that is factual information. When we interpret under Step 1 of ALICE and we're looking at the claims, are we making a legal determination in your view or just factual? At Step 1, and as Your Honor knows, Step 1 and Step 2 can be a little bit blurry at times. The determination of whether the claims are directed to an abstract idea, I think maybe in most situations would be closer, again, to a legal determination. There may be specific cases where it requires assessment of facts. So if we're limited to Step 1, then perhaps that's a legal conclusion. But at Step 2, oftentimes that will be a factual conclusion. And, in fact, this court has specifically held in Bascom and in other cases that in order to reach the determination that there is an inventive concept or not, you have to look at facts. You either have to take judicial notice of things like computers were generally available at a certain time or a barcode scanner was available at a certain time or that certain technology was ubiquitous or those sorts of things. So at Step 2 in particular, that is a factual determination that often can be made on the basis of the pleadings, including the patent specification, but oftentimes cannot. And the Bascom case in particular is an example where there were allegations of a particular inventive concept at Step 2, and the court's holding there was that at the pleading stage, there is no evidence in the record that would allow the court to conclude otherwise through judicial notice or something in the face of the patent specification. So I want to get back to identifying the specific points from the district court's holding for where the court inappropriately took judicial notice. In footnote 5, I'm sorry, on footnote 2 on page 5, so we're looking at appendix 34, there's a litany here of factual findings that are based upon nothing but judicial notice. First, the court construes wireless page message as simply data sent wirelessly rather than data sent over a connection-oriented framework. But the court's support there is nothing more than judicial notice, as the court expressly holds in the very next sentence. So we have a claim construction that is based upon judicial notice, a claim construction that I would assert is wrong in light of evidence that was in the record on the summary judgment motions that was before the court at that time. In that footnote, the court also says that even if notwithstanding the claim construction, that you still fail. Well, the court, I don't know that that's correct. The court says this is how I construe the claims, and therefore you're incorrect. I don't believe the court holds there that if the claim construction that had essentially been offered, first of all, this claim, it has to be noted that neither party designated this term for claim construction. It was disputed for claim construction in the summary judgment briefs. The special master sort of expressly rejected UPS's claim construction for wireless page message but did not adopt a formal construction of this. And then all of a sudden, the court didn't construe this in its order, granting the judgment on the pleadings, and all of a sudden you have this claim construction that drops out of the blue in a footnote on page 5 that's based on nothing more than judicial notice and not based upon... Which term do you want? Wireless page message. To mean what? So wireless page message to a person of ordinary skill in the art in 1996 invokes a connectionless framework. That is key. That is part of the revolutionary aspect of the SkyTel network that was launched just six months prior. Weren't there wireless messages before? There were certainly wireless messages but not through a connectionless framework, which is the key aspect of a network that was launched in 1995, just six months before this patent, the application was filed. I'm not sure I understand what your conception of connectionless framework actually means and how that's somehow distinct from prior art paging services. We're talking about a paging operation center, right? So we're sending messages to an individual's pager. You've got your mail, your mail is at your house. Prior to 1995, the only available paging services were one-way direct paging services, but the connectionless framework is first made commercially available in September of 1995. Based on your preferred construction, it excludes those preexisting well-established one-way paging systems? Yes, that is certainly true, and there's evidence in the record to support that. In particular, there's the… What this patent specification tells me when it talks about a paging operation center, I need to no longer think about the standard one-way paging service, but now I need to think about what Skytel or whoever came up with it six months prior. So this particularized two-way paging system. So the reference is made in column one, line 42 through 47 or so, specifically to the Skytel network that is provided by Emtel Technologies of Jackson, Mississippi, and it has to be noted, and this is in the record. It says such as for example, Skytel, a global paging service provided by Emtel. Yes, and it has to be – this cannot be viewed from hindsight. In 1996… I know, I'm just trying to understand why you have some kind of reasonable construction to tailor down the paging operation center to be something very, very, very specific. It's based upon the understanding of the person of ordinary skill, based upon the evidence that's in the record. I'm happy to cite that to you. If you're looking for something more in the patent specification, I would agree with you. It's not there. But both through the reference to the Skytel network and then through the general description of how the messages are handled, there is evidence in the record that any person of ordinary skill in the art at this time in 1996 would understand that this was a revolutionary network. Emtel received a pioneer preference from the FCC for the development of the technologies that underlie this, and this is recognized as being the modern building block for all current SMS and email wireless delivery in cellular networks today. Hypothetically, let's say there was no such thing as a fax machine, and then you invent fax machines. And then six months later you say, I'm claiming a notification service for alerting you when you got your mail by sending you a fax according to this fax machine that I just invented six months ago. I guess you're saying that you get credit for that and therefore there's an inventive concept there of using the brand new fax machine as a basis for communicating the information about the mail having arrived at the front doorstep. There's an important wrinkle that your hypothetical misses, and that is that the development of the new communications mechanism, fax machine in your hypothetical, but here the connectionless framework, allows that communications framework to solve a specific technical problem that previous communication frameworks were not able to solve. And in particular, that is the technical problem that is outlined as being the deficiencies in the prior art in column one starting at line 26. The previous communications mechanisms require affirmative action on the part of the notification recipient. You had to go check, you had to go make a phone call, you had to go check a website, you had to go do a dial-up connection to a bulletin board somewhere. I don't see how that has anything to do with your SkyTel two-way paging system. You could have just called the person, or sent an email to the person, or sent a fax to the person, or sent a page to the person, or sent a page using the brand new SkyTel. So none of the communications means that you just described allow for delivery of that notification to a person who is mobile and without that person having to do anything. Okay. Okay? I think we got that. I'll restore a couple of minutes of time for your rebuttal. Okay. Thank you, sir. Thank you, Your Honor. Mr. Abhiyankar? Did I pronounce your name right? Abhiyankar. Abhiyankar. Thank you. May it please the Court. I think what we've just heard is an invention that doesn't exist, a patent that doesn't exist. The patent that we have before us is a highly generic set of functional claim limitations directed not to a specific architecture, directed not to the SkyTel network itself. And I think we can take MTEL's own words as admissions of that fact. According to MTEL, the patent does not speak to the – What are you reading from? I'm sorry, the Appendix 560. According to MTEL, on Appendix 560, the 748 patent does not speak – Hold on just a second. Sure. Has the yellow been erased? Has the yellow been erased in the appendix? Yeah. Oh, yeah. It's confidential. Yes, we have no problem with – Is this yours? Is it your data? On the Appendix 560? It's not even data. This is somebody's brief, why it was marked. Oh, the brief was filed under seal at the district court level, Your Honor. We'd like for counsel in these cases where this situation happens, where papers are sealed at the district court level and you come up on appeal, go through the record. I mean, there's no reason why a brief should appear before us marked as confidential. And we've said this time and time again. And I think at some point the court's going to be weary of making these comments and reminding counsel, and we're going to start sanctioning for more heavily, because we have already, for these type of overlooks. Understood. And this is the other side's brief, so you can't stand up there without their permission and start reading from it. Well, let's ask. Do they have permission to cite from your brief? Yes, Your Honor. It's marked confidential because of protect order issues in the district court, but based upon their confidential information. And so we have no problem with them discussing this, any aspects of this. So none of the parties have any problem discussing this from this brief, right? Yes, Your Honor. And to be clear, the statements that I will be reading are not statements about any confidential type of information. They're statements about the patents. Well, we're aware of that. I mean, at least we think it is. That's why I think this Toronto brought up the issue. We look at this. I mean, you can't say that this header is confidential. Understood. My apologies, Your Honor. But on Appendix 560, MTEL states that the 748 patent does not speak to the mechanism of how notifications are analyzed and recognized. On Appendix 569, MTEL states that the 748 patent is, quote,  And if we turn to Appendix 1949. Okay, so what the other side is saying is that this may be the case, but we should have had the opportunity to engage in discovery or at least more factual inquiry in order to fill in what they perceive to be blanks. Correct? That is the other side's position, Your Honor, but there are no facts that they could have until the end of time to develop facts, but the patent itself does not actually disclose. Well, we don't know what the court would decide. I mean, that's your view, but why don't you address the procedural issue involved here? Does a court have to engage in a factual inquiry, in a one-on-one inquiry, at the mention that there's some sort of additional facts that need to be obtained? No, no, Your Honor, and this court has made that very clear, that it can actually address these issues at the pleading stage based only on the patent claims itself, and that's what the district court did here. The district court recognized that the patent does not disclose a particular mechanism for actual wireless paging. All it discloses is the general function. So the other side says the district court cannot do that unless it understands the context of the invention. What's your response? Well, the patent can supply the conventional nature of the technology that's at issue. In this case, the patent at Column 1, it states that the technology of express mail tracking networks, for example, was readily available. In Column 1, starting on lines 15 going to 30, it talks about the fact that even my client, Federal Express, UPS, and others actually had in place networks for tracking express mail deliveries, doing that on a real-time basis. So that technology is not something Intel invented, and they can't say otherwise. They also have never admitted or have never suggested throughout this appeal or during the litigation that they invented wireless paging, because that's what these claims cover. Is there anything in these claims that requires a communication back from the recipient? No, and I was going to say that, Your Honor. I guess I take this. Maybe I should have asked the other side. What does the two-way nature of this connectionless network have to do with these claims? That's a very good question, Your Honor. I don't think it has anything to do with these claims, because as you noted, this claim is a one-way notification method. It is not a two-way notification method. So Intel's attempt on appeal to interject a two-way paging protocol or connectionless framework, as they would like to call it, is simply irrelevant, because the claims don't actually require that. The claims require a very simple, generic, functional step where you're sending, receiving, and relaying information. All of those steps are... And that's because that central processing unit sends out a message that says, your letter has arrived, but there's nothing that requires or obligates the receiver to say, okay, or thanks. Right. Well, and there's nothing in the claims that even talk about how this information is even flowed through the system. How it's received, how it's processed, how it's analyzed, or how it's transmitted. And similarly, under Step 2, their argument is that, well, we were the first ones to come up with this. We were the first ones to implement this abstract idea of delivery notification in the wireless paging context. Whether that's true or not is irrelevant, because that's not the inquiry. That's a novelty inquiry. The inquiry here is looking at the claims to determine whether they actually claim an inventive combination of steps. And in this case, every element is recited in its conventional and ordinary order. Sending, receiving, relaying, transmitting. There's nothing inventive there. And Intel has said, and they say this in their briefing, that they do have other patents in their portfolio that are directed to the, quote, fundamental technology of connectionless transfer. And that may be true, but those claims are not before us today. If the court has any other further questions on the patent eligibility question, I'm happy to answer them. Otherwise, I'll move on to waiver. The district court did not abuse its discretion here. The basis for its decision to consider UPS's motion was based on judicial efficiency and economy principles, which are precisely the principles that this court in Mortgage Grader says are within the inherent power of the district court to manage the cases. What took UPS so long in bringing the one-on challenge? Well, I think Alice, as this court has said in Mortgage Grader and recently in Inventor Holdings, was a significant change in the law. And when was this motion made? This motion was made in July of 2015. That's, like, slightly over a year after Alice, right? Yes, and, Your Honor, the reason for the delay is because when Alice issued, we had already finished fact discovery. We were in the middle of expert discovery. And we were proceeding with an argument based on non-infringement that we thought was very strong. We filed a summary judgment motion shortly thereafter, which was kicked to the special master, and it took the special master nearly nine months to rule. And so we waited for that ruling before we filed our Alice motion. And, again, as we said before, the timing is not prejudicial because there's no facts that MTEL needed to develop in order to prepare its defense. Well, it seems to be not prejudicial because the other side is arguing that you can pretty much bring an Alice challenge any time in the proceeding. That is your position. I've seen cases where this court has entertained one-to-one issues that were brought at the J-ball stage after trial. So I believe you can bring it, depending on the district court's rules and practices. In this case, we brought it when we thought we had the strongest case, and it ultimately prevailed. Yes, yes. But I don't think there's any rule that says you have to file your one-to-one at the pleading stage or you must file your one-to-one at summary judgment. I guess my point is, in the context of that case, the Federal Circuit didn't bless raising a one-to-one challenge all the way until the J-ball. That's right. I don't think the Federal Circuit affirmatively said that that was an appropriate mechanism. Correct. What about the gathering of factual evidence? Do you see any authority that requires that a district court to engage in some sort of discovery or additional fact-finding when an allegation is made that fact-finding needs to be made? No, I think that is an argument that is frequently made by patentees, but district courts can look to the patent and determine whether they need additional facts to evaluate the two-step inquiry. And so, in this case, the district court... What you just said is a different way of saying that in order for there to be a requirement that fact discovery go forward, the alleged facts have to be seen to be at least potentially material to the outcome. And here, if you look at the claim and you look at this two-column specification, it's perfectly clear that the facts that they're talking about just aren't material to the outcome. That is of necessity the argument you're making. That is correct, Your Honor. But in a different case, facts truly might be material if you can't tell what the claim means or whatever. Yes, precisely. Or if it's a patent about an improvement to technical functionality where you need to look at what the prior art was doing before. Once you get into that, once you go down that path and you're alleging that facts or additional fact-finding is required because those facts are material to resolving a one-on-one inquiry, then isn't that type of allegation easily made? I mean, isn't that going to require district courts to go down that path almost every time? If we authorize that. Well, I think the district court had to address that in this case. And the way the district court did it was to say, well, I'm looking at the patent and I don't need additional facts. The facts are supplied to me by the patents themselves as well as your admissions or your characterizations of the invention. Shouldn't that be the case in every one-on-one inquiry? I mean, shouldn't the one-on-one inquiry be based solely on the intrinsic record? And if it can't be resolved there, then you deny the one-on-one challenge. Well, I think that's how the procedure would operate. If you can address the one-on-one based on the patent claims themselves without resort to extrinsic evidence, then yes, you can do that without having to engage in any factual discovery of any kind. I think there have been cases where some district courts have said, well, I don't know from the patent whether a prior art method actually did what you're saying it did, so I need to look to other facts. But why would the prior art matter? I mean, where does the prior art fit in a one-on-one inquiry? Sorry, not prior art. What I meant was the prior ways of using technology to do something and whether this patent is actually an improvement to that method of whatever it is. So in this case, there's no discussion of a technical problem that the claims are attempting to solve. It's a business problem, one of convenience. It's just delivering notifications a different way. In this case, they placed it in a particular technological context, but as Alice in this court's precedent has told us, that's not enough. Unless your court has any further questions on that. Thank you. Thank you very much. Mr. Parker, we're going to refer you back to 3, okay? Three minutes total, Your Honor? Three minutes, yes. Thank you. Your Honor, in every prior case in which a Section 101 determination or patent has been found invalid at the pleading stage, there has been some finding that some concept there is either generic or ubiquitous or conventional based upon either something that is stated in the patent itself or based upon judicial notice of facts such as certain business practices are long known or that computers by the 1990s or 2000s are common and operate in a certain conventional way. In this case, there is no evidence at the pleading stage whatsoever from which this court or the district court below could determine, consistent with Rule 202, that the wireless page message or the network operation centers are conventional, particularly given the evidence that is in the record that the launch of the SkyTel network just six months before this patent application was a revolutionary new telecommunications network. In a nutshell, the inventive concept behind the 748 patent is much like the Amdocs decision. The claims here take a known but by no means conventional, okay? That's the important part. Known systems, the connectionless framework, the two-way paging is not the important part. It's the connectionless framework here that allows for the solving of a new technical problem. So the claims here take a known but by no means conventional process for connectionless wireless paging and put those revolutionary processes to a new use in the realm of express mail tracking to solve a long-standing technical problem. This falls squarely within the definition of a patent-eligible process under the definition provided in 35 U.S.C. 100B. Can you quickly describe why this particular paging system does these claim steps better than the one-way paging system? Yes, and so the connectionless framework allows for the storage of messages or data during a time period when the recipient, the pager recipient, is offline. And so that connectionless framework allows for messages to be delivered without any affirmative action by the recipient, such as connecting to a network, the connection step that is required. The connectionless framework allowed the solving of the specific technical problem not just of delivery of notifications, but delivery without requiring any user intervention while that person is mobile. That's the technical problem that is solved by this new revolutionary technology that first became available in 1995, a technology for which Intel received a pioneer preference for the underlying technical concepts that allowed it to then put that new, that known but relatively new and not conventional technique to a new use. I hope here in my last concluding seconds that the Court will strictly adhere to the requirements of Rule of Evidence 202, and I hope that you will write an opinion in this case focused on the Bascom decision and the way in which at the pleading stage allegations of inventive concept or claims construction must be construed in favor of the patentee. And unless there is evidence at the pleading stage, be it in the intrinsic record of the patent specification or a fact that is actually proper for judicial notice, then Section 101 cannot be determined at the pleading stage, but instead should be left for summary judgment so that evidence can be considered and evidence can be reviewed by this Court, not based upon the willy-nilly notions of judicial notice as the trial court below did here. Okay. Thank you very much.